## Commonwealth *v.* McKenna, Appellant.

318

Argued June 14, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*Martin A. Heckscher*, with him *Herman I. Pollock*, Voluntary Defender, for appellant.

*William G. Klenk, II*, Assistant District Attorney, with him *Joseph M. Smith*, Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.*, First Assistant District

Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., September 16, 1965:

Appellant was convicted by a jury of conspiracy and blackmail. After his motions in arrest of judgment and for a new trial were denied, sentence was imposed. This appeal followed.

Appellant contends that a new trial should be granted on the basis of four alleged trial errors. We shall consider them in the order presented.

First, appellant argues that the trial court erred in permitting the Commonwealth to introduce evidence which disclosed to the jury that he had a prior criminal record even though he did not testify. The Commonwealth's second witness, George Newsome, who had pled guilty to the same conspiracy and blackmail charges, testified that he gave the blackmail statement to one Samuel Evans in exchange for $200.00. The statement had the name Matthew Dietz signed at the bottom, but Newsome said he got it from appellant. Newsome testified in chief that when he asked appellant in a tavern how he got the statement bearing the signature of Dietz, appellant told him that he "brought it out of jail with him." Appellant's motions to strike this statement and to withdraw a juror were overruled. Later, defense witness, Dietz, presented a completely different explanation, denying that the signature on the blackmail statement was his and testifying that he gave two letters for mailing to Newsome in a tavern which letters were used but changed to form the blackmail statement. He testified very evasively as to his contacts with appellant while they were in prison together. Dietz was cross-examined regarding his contact with appellant in jail. The Commonwealth in rebuttal, over objection, introduced Moyamensing Prison records which showed that appellant was an inmate

there from March 21 to April 13, 1963, and that Dietz was there from March 7 to April 26, 1963, in the same block so that they ate and exercised together. The statement was given to Evans on April 19, 1963, six days after appellant was released from prison. Appellant contends that reversible error was committed in allowing into evidence these references to his imprisonment for an unconnected crime. He claims that the prosecution may not introduce evidence of a defendant's prior crimes unless and until the defendant puts his character into issue by his own testimony or otherwise, citing *Commonwealth v. Williams*, 307 Pa. 134, 160 A. 602 (1932). This is true in that such evidence may not be admitted for the purpose of affecting credibility until a defendant's character is in issue, nor may a prior offense be shown as substantive proof of an unconnected crime. However, commission of another offense is admissible if it ". . . became part of the history of the event on trial, or was part of the natural development of the facts . . ." *Commonwealth v. Williams*, supra. The testimony that appellant got the statement in jail showed an essential link in the chain of the crime for which appellant was being tried and was properly admitted. *Commonwealth v. Edwards*, 318 Pa. 1, 178 A. 20 (1935).

The first time appellant's incarceration was mentioned was in the testimony of Newsome, the co-conspirator, who was testifying as to the declaration of a co-conspirator, appellant. If the trial judge had stricken that part of Newsome's testimony in which appellant told Newsome that he had gotten the note from Dietz in jail, the Commonwealth would have been left with a case consisting of a blackmail statement signed by Dietz and passed to the victim by Newsome. Appellant's part in the plot would have been hazy, to say the least. In light of Dietz's later testimony which implicated Newsome but excluded appellant, it was neces-

sary to link appellant with Dietz by credible evidence. The fact that this link occurred while both were in jail does not give appellant the right to keep this fact from the jury. Appellant's presence in prison at the time at issue was very relevant in this case and any possible prejudicial impact was outweighed by the probative value of the testimony. We find no error in allowing the admission of the testimony. What was said by the Supreme Court in *Commonwealth v. Robb*, 284 Pa. 99 at 104, 130 A. 302 (1925), is applicable here: "Nor is there merit in the complaint that it appears from these narratives that defendant had been in the penitentiary. No effort was made by the Commonwealth to prove this for the purpose of showing the commission of some offense not involved in the trial."

Appellant's second argument is that the trial court erred in admitting the testimony of Evans, the victim, before there was any testimony implicating appellant in the conspiracy. Evans was the Commonwealth's first witness and described the events leading up to his meeting with Newsome, at which time he gave Newsome $200.00 for the blackmail note. He told of a telephone call asking him to meet the caller in a certain tavern in Philadelphia the next day at 11:00 a.m. He also described his contact with the police and their plan to nab the caller after Evans gave him $200.00 in marked money. Evans admitted that Newsome, not appellant, was the person he met at the tavern. Newsome was the next witness and not until he testified was appellant linked to the conspiracy.

Allowing Evans to testify as to his contacts with co-conspirator Newsome before the conspiracy was proved was a question of order of proof. This is a matter largely in the discretion of the trial court. *Commonwealth v. Horvath*, 187 Pa. Superior Ct. 206, 144 A. 2d 489 (1958). As was said in *Commonwealth v. Moyer*, 52 Pa. Superior Ct. 548 at 554-555 (1913):

"A large discretion is allowed to the presiding judge in the admission of evidence on a trial for conspiracy having numerous actors and shifting scenes of action as the fact of conspiracy is often made out by the association of detached facts and by the reasonable inferences deducible therefrom." Under the circumstances of this case we find no abuse of discretion.

Appellant's third contention is that the trial court erred in permitting the attorney who had represented witness Dietz at a prior trial to testify as to communications between him and Dietz in violation of the attorney-client privilege. This is disposed of easily. First, the right to assert the privilege is that of the client. *Dowie's Estate,* 135 Pa. 210, 19 A. 936 (1890). Thus it was Dietz, not appellant, who had the right to object and Dietz, who was present in court when the attorney testified, did not object. Second, Dietz in his testimony had criticized the capabilities and efforts of his trial attorney. The privilege was not available to silence the attorney as he rebutted the attacks on his professional competence. *Doll v. Loesel,* 288 Pa. 527, 136 A. 796 (1927).

Appellant also complains that the trial court did not sufficiently charge as to the testimony of Newsome, the co-conspirator. He asserts that the Commonwealth's case rested on the uncorroborated testimony of an accomplice, Newsome, and that reversible error was committed by the lower court in failing to charge that the jury should be "reluctant to convict on this basis alone." Appellant's first assertion is not supported by the record; his second assertion is not supported by the case law.

In his testimony Evans, the target of the blackmail plot, related a version of the scheme substantially identical to Newsome's insofar as it involved Evans. The prison records corroborated Newsome's testimony as to

how and when appellant became a part of the blackmail conspiracy. Testimony to be classed as corroboration need not relate solely to the main fact involved, but may be considered as corroboration when the testimony relates to relevant and material facts which have a direct relation to the main fact involved. *Commonwealth v. Lucchese,* 155 Pa. Superior Ct. 325, 38 A. 2d 722 (1944). Even if the accomplice's testimony were uncorroborated no reversible error was committed in this case. In either event the form of the instruction warning the jury of the corrupt source of an accomplice's testimony lies within the discretion of the court. *Commonwealth v. Brown,* 158 Pa. Superior Ct. 226, 44 A. 2d 524 (1945).

In our case the trial judge cautioned the jury as follows:

"I warn you on the co-conspirator's testimony, about which you have heard a great deal in argument by counsel. The principal witness of the Commonwealth in this case is, of course, George Newsome. Newsome is a criminal defendant in the case and he has pled guilty. I must warn you that the testimony of the co-conspirator in this case, George Newsome, is that of an admitted criminal who has pled guilty to these charges and that it comes from an admittedly corrupt source.

"Under our law the decisions say you must carefully scan the testimony because it comes from a corrupt source. There is no question about that in this case . . .

"You must carefully examine and scrutinize the testimony of Newsome before you believe it and base your decision upon it only after scanning it carefully and seeing if the testimony is weak in any respect, whether it should be ignored because it is false and full of inaccuracies or anything like that."

This charge was more cautionary than the one given in *Brown,* where corroboration was limited to the cor-

pus delicti, and we find no reversible error. Furthermore, appellant cannot now complain of mere inadequacies in the charge, having made no specific request on this subject when the trial judge asked for points for charge at the conclusion of his general charge. *Commonwealth v. Brown,* supra.

Judgment of sentence affirmed.