365 A.2d 1298

**COMMONWEALTH of Pennsylvania**

v.

**Theodore F. STAKLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 13, 1976.

Decided Nov. 22, 1976.

Timothy Shaffer, Court-appointed, Butler, for appellant.

Robert F. Hawk, Asst. Dist. Atty., Butler, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge.

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, of Butler County by the defendant-appellant, Theodore F. Stakley, after conviction for the crime of theft of services; and from the denial of post trial motions.

The defendant was arrested on May 29, 1975 and charged with theft of services for placing phone calls in the amount of $489.53 without intending to pay for them. He was convicted and sentenced to a term of imprisonment of one and a half to three years. This appeal followed.

The charges were based on a series of phone calls made by the appellant from various locations to his friends and relatives all over the United States. The calls were charged to the phone number of one William H. Gray without Mr. Gray's permission.

The issue involved in this case is the contention of the appellant that an "unsuitable discharge" from the United States Army which was permitted to be introduced into the evidence was prejudicial and requires a new trial. The matter came into evidence in the following manner on cross-examination by the defense attorney:

"Q. [by defense counsel] May I ask you just a couple more things here, sir. As part of your investigation did you obtain Mr. Stakley's military discharge and military records as part of your investigation?

"A. [by Mr. Meyers] Yes, I did.

"Q. May I ask you how the telephone company was, managed to get these, what are usually very classified documents?

"[the District Attorney] I'll object to that.

"THE COURT: That's sustained. There's nothing classified about a military discharge. You recast that question.

"[defense counsel] I'll withdraw the question."

On redirect examination, the district attorney pursued the subject of appellant's discharge:

"Q. Mr. Meyers, did—I think I'd like to ask you a little bit about this, since the defense attorney briefly got into this. What was the occasion of your having ques-

tioned the discharge of the defendant here from the Army? What occasioned you to do that?

"A.   At the magistrate's hearing here in Butler Mr. Stakley said that it was my fault for initiating a C.I.D. investigation that caused him to be kicked out of the Army on an unsuitability discharge.

"Q.   Your fault as in Mr. Meyers' fault?

"A.   Yes, I called his former commander at Fort Ord, California and he assured me it had nothing to do with this particular civilian investigation, because the staff judge advocate at Fort Ord indicated they would have nothing to do with the civilian offense, and he was given an unsuitability discharge."

■ The purpose of counsel's questioning was evidently to discredit the testimony of the investigatory witness of the Commonwealth and, once asked, the Commonwealth was justified by re-examination to attempt to reinstate his credibility.

■ We do not reach in this case the question as to whether evidence of a dishonorable or unsuitable discharge may in any instance be permitted into evidence. The issue in this appeal is whether the question asked by the defendant's counsel opened the door for rebuttal testimony by the Commonwealth. This question of "opening the gate" was discussed in *McCormick, Evidence* §§ 32, 57 (Cleary 2d Ed.), as follows:

"One party offers evidence which is inadmissible. Because the adversary fails to object, or because the judge erroneously overrules an objection, the incompetent evidence comes in. Is the adversary entitled to answer this evidence, by testimony in denial or explanation of the facts so proved? . . . [M]ost of the courts seem to say generally that 'one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot

complain if his adversary is also allowed to avail himself of the opening.' "

The phrase "opening the door" or "opening the gate" by cross-examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.

The most reasonable deduction that can be made by a jury from the questions asked would be an inference that the discharge was an honorable one or his counsel would never have raised the question. This would enhance the defendant's credibility. So, on rebuttal the Commonwealth was properly permitted to reveal that defendant's discharge record was unsuitable. As the court below aptly put it: "This was akin to the defendant implying that he had a good military record . . ."

Further, the evidence to convict the defendant was overwhelming in nature. In *Commonwealth v. Palmer*, 463 Pa. 26, 342 A.2d 387 (1975), a murder case, the Supreme Court said, at page 392:

> " ' " [e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial" ' ". Rather the remark must be ' "*of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial*" '. [Emphasis in original.] *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), quoting from *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733 (1957)."

Further, in *Palmer, supra,* at page 392, the Supreme Court noted:

> "Finally, if counsel viewed the statement as harmful, a cautionary instruction should have been requested. No such request was made."

This is also true in the instant case and as in *Palmer, supra,* the question concerning the discharge was an isolated one and no further mention was made either at trial or in closing arguments.

Judgment affirmed.

PRICE, J., files a concurring opinion.

HOFFMAN, J., files a dissenting opinion in which CERCONE and SPAETH, JJ., join.

PRICE, Judge (concurring).

Preliminarily, I note that I agree completely with the majority's conclusion that the question of whether evidence of a dishonorable discharge is admissible to prove bad character is not actually raised by the facts of this case. At trial, the appellant neither took the stand nor introduced evidence of his own good character. Therefore, his character was never at issue, *Commonwealth v. McKenna,* 206 Pa.Super. 317, 213 A.2d 223 (1965); *Commonwealth v. Steinberg,* 189 Pa.Super. 381, 150 A.2d 131 (1959); *J. Wigmore, Evidence,* §§ 56–58 (3d ed. 1940), and not even evidence proper for proving character would have been admissible to prove that trait. Thus, whether a dishonorable discharge would be suitable to prove bad character in a case where character is properly at issue is totally irrelevant to the issue in this case, and it should remain, for the time being, a question unresolved in Pennsylvania.

The question raised by the facts of this case is whether appellant's counsel opened up the subject of appellant's military records, and, if so, whether the prosecution went too far in its exploration of the opened subject. Appellant's military record was not mentioned at trial

until his attorney examined a telephone company security officer, Mr. Meyers, as follows:

"Q. May I ask you just a couple more things here, sir. As part of your investigation did you obtain Mr. Stakley's military discharge and military records as part of your investigation

A. Yes, I did.

Q. May I ask you how the telephone company was, managed to get these, what are usually very classified documents?

Mr. Givan (the district attorney): I'll object to that.

The Court: That's sustained. There's nothing classified about a military discharge. You recast that question.

Mr. Shaffer (defense counsel): I'll withdraw the question." (36–37)

The Commonwealth contends that appellant's counsel opened up the subject of appellant's military records by implying that the witness had unethically acquired the records. The dissent acknowledges the possibility of this effect, but reasons that such an effect could have been sufficiently countered by a discussion limited to the propriety of the witness' acquisition of the records. I disagree.

A thoughtful examination of the question asked by appellant's counsel reveals that its implication was not that the witness had acted improperly; the implication was that the *telephone company* had acted improperly. I believe that counsel's questions were intended to conjure up visions of the "big brother" image which some perhaps overly imaginative persons have ascribed to the telephone company. Appellant's counsel, employing a very interesting strategy, wished to portray the situation as being that of an innocent individual at the mercy of a corporate giant.

Under the circumstances, it was not only important for the jury to know *how* the telephone company acquired the records; it was also extremely important for the jury to know *why* the phone company was in possession of those records. Only by revealing both *how* and *why* the records were obtained could the implication of impropriety be erased.

Why, in fact, were the records obtained by Mr. Meyers? At an earlier hearing, appellant had accused Mr. Meyers of being responsible for appellant's discharge from the army. Thus, the reason for the phone company's possession of the records could not be revealed without also revealing appellant's accusation, and, ultimately, appellant's dishonorable discharge.

I believe that any prejudice suffered by appellant was caused by his own actions. First, at the preliminary hearing, appellant falsely charged Mr. Meyers with causing his discharge. Then, after Mr. Meyers ascertained that this fact was untrue, appellant falsely implied that his privacy had been unjustifiably invaded. The Commonwealth was entitled to place the true, innocent motivations of Mr. Meyers before the jury, and the fact that appellant's character was inevitably revealed is not reversible error. *Commonwealth v. Edwards*, 318 Pa. 1, 178 A. 20 (1935); *Commonwealth v. McKenna, supra.*

I join, therefore, in affirming the judgment of sentence.

HOFFMAN, Judge (dissenting):

At appellant's trial, the prosecution's main witness testified that appellant had received "an unsuitability discharge" from the United States Army. Appellant contends that admission of such evidence was prejudicial and requires a new trial.

The appellant was arrested on May 29, 1975, and charged with theft of services,[1] for placing phone calls in

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 3926.

the amount of $489.53 without intending to pay for them. On October 28, 1975, after a two day trial, a jury found appellant guilty as charged. After denial of post-trial motions, the court sentenced appellant to a term of imprisonment of one and one-half to three years. This appeal followed.

The charges were based on a series of phone calls made by appellant from various locations to his friends and relatives all over the United States. The calls were charged to the phone number of one William H. Gray without Mr. Gray's permission. Appellant, who was then serving in the United States Army, was located through the investigation of James R. Meyers, Security Investigator of the United Telephone System. After appellant's arrest, but before trial, appellant was given an "unsuitability discharge" from the Army.

At trial, that fact was introduced in the following manner:

"Q. [by Defense Counsel] : May I ask you just a couple more things here, sir. As part of your investigation did you obtain Mr. Stakley's military discharge and military records as part of your investigation?

"A. [by Mr. Meyers]: Yes, I did.

"Q. May I ask you how the telephone company was, managed to get these, what are usually very classified documents?

"[The District Attorney]: I'll object to that.

"THE COURT: That's sustained. There's nothing classified about a military discharge. You recast that question.

"[Defense counsel]: I'll withdraw the question."

On redirect examination, the district attorney pursued the subject of appellant's discharge:

"Q. Mr. Meyers, did—I think I'd like to ask you a little bit about this, since the defense attorney briefly got

into this. What was the occasion of your having questioned the discharge . . . of the defendant here from the Army? What occasioned you to do that?

"A. At the magistrate's hearing here in Butler Mr. Stakley said that it was my fault for initiating a C.I.D. investigation that caused him to be kicked out of the Army on an unsuitability discharge.

"Q. Your fault as in Mr. Meyers' fault?

"A. Yes. I called his former commander at Fort Ord, California and he assured me it had nothing to do with this particular civilian investigation, because the staff judge advocate at Fort Ord indicated they would have nothing to do with the civilian offense, and he was given an unsuitability discharge."

After defense counsel objected and moved for a mistrial, the witness was permitted to testify further that the discharge resulted from two previous "AWOL'S."

Appellant contends that it was error to permit testimony concerning the discharge into evidence. The Commonwealth concedes that, although a question of first impression in Pennsylvania, evidence of a dishonorable discharge is generally inadmissible to prove bad character. See Annot., 9 A.L.R.2d 606. The position of the Commonwealth and the court below is that the appellant opened inquiry into the subject and he, therefore, waived objection to the Commonwealth's additional evidence on the subject.

More specifically, the Commonwealth argues that "[n]ot only did defense counsel inquire as to the witnesses [sic] knowledge of Appellant's military records, but he implied that witness Meyers had acted in at least an unethical manner when he asked how the witness 'managed to get these, what are usually very classified documents' . . . By asking the questions concerning Appellant's army service, he implied that he has a positive record. That opens the door to further inquiry by the Commonwealth." I would decide whether defense

counsel's question "opened up" the subject of appellant's military record, and if so, how far the subject was "opened up."

The concept of opening up a subject of inquiry or "opening the gate", as Professor McCormick calls it, is frequently a question of the scope of cross-examination or scope of redirect examination. See McCormick, Evidence §§ 32, 57 (Cleary 2d Ed.). That is, if a witness for one party testifies on a matter inadmissible if introduced by the other party, the other party can subsequently introduce evidence on that subject. Professor McCormick explains the rule as follows: "One party offers evidence which is inadmissible. Because the adversary fails to object, or because the judge erroneously overrules an objection, the incompetent evidence comes in. Is the adversary entitled to answer this evidence, by testimony in denial or explanation of the facts so proved? . . . [M]ost of the courts seem to say generally that 'one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening!" [2] McCormick, supra, § 57. Undoubtedly, such a rule is a fair one. Professor McCormick makes the following point which is relevant to the instant case: "If the evidence, though inadmissible, is relevant to the issues and hence probably damaging to the adversary's case, or though irrelevant is prejudice-arousing to a material degree, and if the adversary has seasonably objected or moved to strike, then the adversary should be entitled to give answering evidence as of right." Id. At the same time, once a subject is opened up to inquiry, evidence offered by the other party must

---

2. The hypothetical cited above is not directly on point with the instant case in that defense counsel's questions were not "evidence" and because the lower court sustained the Commonwealth's objection. I agree with the Commonwealth's assertion that the questions themselves, although technically not evidence, were sufficiently prejudicial to permit relevant evidence to contradict the implications of the questions.

be within the scope of the evidence originally offered. "Opening the gate" or "fighting fire with fire," as Professor McCormick descriptively labels the concept, is not an excuse to introduce whatever irrelevant evidence a party may choose. See *Eller v. Work,* 233 Pa.Super. 186, 336 A.2d 645 (1975).

In *Eller,* the appellant initially questioned the investigating police officer concerning the identification of the driver of the automobile involved in the accident which gave rise to the law suit. The lower court then permitted appellee to ask the officer what else the appellee had told the officer at that time. In this Court, we noted that "[n]either the appellee nor the lower court argues that the appellee's declaration falls within one of the recognized exceptions to the hearsay rule. Rather, both contend that the testimony was properly admitted because the appellant had 'opened the door' to this line of questioning, by asking [the officer] on direct examination whether during the course of investigation he had determined who was driving the automobile. In its opinion, the lower court stated: 'The testimony of the officer concerning the identification of the driver by the defendant's own admission was properly admissible and the remainder of the statement made to the officer in conducting his investigation was likewise admissible.' This reasoning completely ignores the existence of the rule prohibiting the admission of hearsay declarations." 233 Pa.Super. at 193, 336 A.2d at 649. That is, once a subject is opened up, rules of evidence still govern the scope of the inquiry.

Defense counsel asked only two questions on the subject of appellant's military status—one, whether the witness had been able to obtain the records (he had), and two, how he had been able to procure "very classified documents." Neither question raises an inference that appellant had received an honorable discharge or that he had served honorably. Cf. *People v. Houser,* 85 Cal.

App.2d 686, 193 P.2d 937 (1948); *People v. English,* 68 Cal.App.2d 670, 157 P.2d 429 (1945); (when defendant produced evidence that he had received an honorable discharge to create a favorable impression the state was permitted to examine further defendant's conduct in the military). Therefore, the lower court was clearly in error when it stated that the defense counsel's questions were "akin to the defendant implying that he had a good military record. . . ."

The Commonwealth also argues that defense counsel's questions implied that the prosecution witness had acted improperly in procuring "very classified" records; therefore, the "unsuitability discharge" was admissible "to dispel the implication that its witness had acted in an unethical manner." Immediately after the Commonwealth objected to defense counsel's second question, the court sustained the objection and noted that "[t]here's nothing classified about a military discharge." Obviously, the court's statement was not evidence; it does, however, underscore the proper area of inquiry if, in fact, the Commonwealth was intent upon dispelling the suggestion of improper action by the witness. That is, the defense counsel's questions may have "opened up" inquiry into the status of military records and access by the public to such records. Defense counsel did not also open up inquiry into the contents of appellant's record. Restated, the nature of appellant's military discharge was irrelevant to the issue of whether the witness had acted improperly in procuring that information.[3]

3. Even if defense counsel's question somehow opened up the door to a limited degree to clarify the purpose of the telephone company's inquiry, the prosecutor went far beyond any reasonable bound in his examination of the witness. After he asked Mr. Meyers why the witness had conducted his investigation, the prosecutor went further and elicited testimony that appellant had been discharged for being "AWOL." I note that this cannot be considered harmless error. Appellant's guilt was not overwhelmingly clear, given Mr. Gray's testimony that he had told appellant that he could make some of the phone calls and charge them to Mr. Gray. Thus, appellant may well have been convicted because

Because I conclude that such inquiry was irrelevant, I would then decide whether evidence of appellant's military record was prejudicial, thereby requiring a new trial. As noted supra, the Commonwealth concedes that if introduced to show bad character, such evidence is prejudicial. See *Andrews v. State*, 172 So.2d 505 (Fla. App.1965).[4] Although I find no Pennsylvania cases directly on point, I would join the majority of jurisdictions which hold that admission of a dishonorable discharge into evidence on the issue of character is prejudicial. See Annot., 9 A.L.R.2d 606; cf. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972) (admission of prior criminal activity).

Therefore, appellant's conviction should be reversed and the case remanded for a new trial.

CERCONE and SPAETH, JJ., join in this dissenting opinion.

the jury thought that he was a bad person, rather than because the jury believed that he had intended to "steal" telephone services.

4. The only Pennsylvania case in which the problem of use of military discharge arose is not controlling. In *Commonwealth v. Steele*, 362 Pa. 427, 66 A.2d 825 (1949), the Commonwealth introduced appellant's military record to show that he was familiar with firearms. He was charged with murder and defended on the ground that the death of his wife was the result of an accidental discharge of the murder weapon.