COMMONWEALTH of Pennsylvania,
Appellee,

v.

**George PATTAKOS, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 3, 2000.
Filed May 16, 2000.
Reargument Denied July 26, 2000.

Paul D. Boas, Pittsburgh, for appellant.

Stephie-Anna K. Fernsler, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

Before DEL SOLE, EAKIN and TODD, JJ.

TODD, J.:

¶ 1 George Pattakos appeals from the judgment of sentence entered after a jury convicted him of violating two provisions of the Controlled Substance, Drug, Device and Cosmetic Act: Possession With Intent to Deliver and Possession of a Controlled Substance (35 Pa.C.S.A. §§ 780–113(a)(30) and 113(a)(16)). Following trial, Allegheny County Common Pleas Court Judge Raymond Novak sentenced Appellant to serve thirty days incarceration with a recommendation of alternative housing and work release, sixty days intermediate punishment on electronic monitoring and five years probation. For the reasons that follow, we affirm.

¶ 2 The relevant facts are as follows. Pennsylvania State Trooper Conrad Williams, acting undercover in an ongoing drug investigation, encountered Frank Moffitt, who sold Conrad marijuana on three occasions. As a result of these sales, Conrad secured a search warrant for Moffitt's home, where marijuana and drug par-aphernalia were found. The three drug purchases, as well as the illegal items lawfully seized from Moffitt's residence, resulted in the filing of four criminal cases against Moffitt. In an effort to gain favorable treatment from the court, Moffitt agreed to assist the State Police in their quest for drug suppliers and provided the name of his supplier, Appellant Pattakos.

¶ 3 Moffitt's cooperation with the police led him to meet with Trooper Conrad and Trooper Paul Dschuhan at a baseball field in Glassport. Moffitt called Pattakos and advised him that he would be coming to Pattakos' home shortly. The Troopers then proceeded with Moffitt in his van to Pattakos' residence and gave him $200 in marked "official funds" for use in the sting operation. While the Troopers remained in the van out of sight, Moffitt proceeded into Pattakos' residence. Soon after, Moffitt returned to the van with a plastic bag of marijuana, having given Pattakos the $200 in official funds.

¶ 4 Pattakos subsequently was arrested and charged with the aforementioned crimes, as well as 35 Pa.C.S.A. § 780–113(a)(16), Delivery of a Controlled Substance. At a suppression hearing on June 17, 1999 before Judge Novak, the warrant under which Pattakos' home was searched was held to be invalid and the fruits of the illegal search and seizure, including the "official funds", additional marijuana and drug paraphernalia, were suppressed. Following the suppression hearing, a jury convicted Pattakos of the remaining charges and this appeal followed.

¶ 5 On appeal, Pattakos raises two questions for our review:

1) Whether the trial court erred in allowing the Commonwealth to introduce testimony regarding prior uncharged drug transactions between Appellant and the informant;

2) Whether the trial court erred in prohibiting Appellant's counsel from specifically arguing to the jury that there was no evidence in the record

as to what happened to the marked "official funds" that had been suppressed as a result of the illegal search of Pattakos' residence and seizure of the evidence contained therein.

¶6 Pattakos first argues that the trial court abused its discretion in allowing the Commonwealth to introduce evidence of prior uncharged drug transactions between Appellant and Moffitt, the informant. Over objection, the trial court permitted the Commonwealth to elicit testimony from Moffitt of previous marijuana deals he had made with Pattakos in describing how Moffitt knew Pattakos and was able to lead police to him. Pattakos maintains that Moffitt's testimony pertaining to previous drug transactions with him was inadmissible because Pattakos did not raise a defense "in which he claimed to have no knowledge of Mr. Moffitt, or no knowledge of marijuana, or not to have been home at the time the events in question took place, or that this was some sort of accident or mistake." (Appellant's Brief at 11.)

¶7 Our standard of review in analyzing evidentiary claims is well settled:

The admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion.

*Commonwealth v. Robinson,* 554 Pa. 293, 304, 721 A.2d 344, 350 (1998).

¶8 Moreover, Appellant is correct in stating that evidence of prior crimes is generally inadmissible because of its potentially prejudicial effect on a jury. Pattakos argues that the trial court's failure to preclude the Commonwealth from eliciting testimony of prior drug transactions between Moffitt and Pattakos was so prejudicial as to outweigh any probative value of the testimony. The Supreme Court of Pennsylvania has stated that "[e]vidence of prior crimes and/or acts of violence are inadmissible merely to show the defen-

dant's propensity for violence or bad character." *Commonwealth v. Banks,* 513 Pa. 318, 349, 521 A.2d 1, 17 (1987) (citations omitted).

¶9 However, our Supreme Court also has carved out certain exceptions to this general rule. Specifically, the Court stated that:

[The] general rule prohibiting the admission of evidence of prior crimes nevertheless allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Banks,* 513 Pa. at 350, 521 A.2d at 17.

¶10 Keeping these principles in mind, we review Pattakos' specific assertions of error.

¶11 In support of its position that Moffitt's testimony regarding his prior drug transactions with Pattakos properly was admitted, the Commonwealth cites *Commonwealth v. Echevarria,* 394 Pa.Super. 261, 575 A.2d 620 (1990). The facts of *Echevarria* are comparable to those of the instant case. There, the defendant had been charged with the intent to deliver a large quantity of cocaine seized from his home. *Id.* at 622. At trial, the Commonwealth introduced testimony that an informant twice previously had purchased cocaine from the defendant prior to the sale that resulted in the defendant's arrest. *Id.* at 623. On appeal, this Court held that such testimony was admissible as probative of defendant's status as a cocaine dealer and that its probative value outweighed its prejudicial effect. *Id.*

¶ 12 Pattakos argues that the prosecutor's reference to prior transactions in his opening statement to the jury was not even permissible as rebuttal testimony as the defense had not "opened the door" to such testimony so early in the proceedings. (Appellant's Brief at 13.) He asserts that none of the stated exceptions to the prohibition against admission of evidence regarding prior bad acts applies to his situation and that the repeated references to his past criminal activity created a presumption in the jury's mind that "if he did it before he must be doing it again." (Appellant's Brief at 15.) We disagree.

¶ 13 In *Commonwealth v. Russell,* 459 Pa. 1, 326 A.2d 303 (1974), the Supreme Court analyzed whether reports prepared by a homicide victim containing references to previous drug contacts and conversations with the defendant were admissible. In acknowledging that evidence of prior criminal activity normally is inadmissible, the Court held that even assuming that the mention of drug involvement implied criminal activity, the evidence was admissible in that case to show the relationship between the defendant and the victim. *Id.* at 7, 326 A.2d at 306.

■ ¶ 14 Similarly, Judge Novak, in his well-reasoned decision in this case, also determined that the existence of the relationship between Moffitt and Pattakos was critical to the jury's understanding of the case. Judge Novak held that "the Commonwealth was entitled to show that this was not a random meeting between the parties; but rather, Mr. Moffitt would receive drugs on consignment from the defendant on a regular basis." (Trial Court Opinion, 1/29/99, at 5.) We agree. The establishment of a prior relationship between these parties was critical to the explanation of why Moffitt and the police would have targeted Pattakos, rather than

an individual at random, in the first place. Accordingly, the testimony properly was admitted.[1]

■ ¶ 15 Appellant next argues that the trial court erred in refusing to allow his counsel to argue in closing remarks to the jury that there was no evidence of record as to the whereabouts of the marked "official funds." The money, marijuana, and other items were suppressed as "fruits of the poisonous tree" by the trial court following a determination that the search warrant authorizing a search of Pattakos' residence had been issued without sufficient probable cause. Before closing arguments, the Commonwealth requested a conference in chambers wherein counsel advised the trial judge that he believed that Appellant's counsel planned specifically to discuss in his closing argument the absence of evidence as to the official funds. Pattakos asserts that his counsel should have been able to argue to the jury that "there was no evidence as to what happened with the official funds" and there was "nothing on this record indicating anything about the official funds." (N.T., 6/17/98, at 171.)

¶ 16 The trial court disallowed argument of that nature, stating:

Well, I don't feel that it is proper. If we have anything along this line, Mr. Boas, I will declare a mistrial. We will start the whole trial over again.

The Court feels that you are taking advantage of the suppression ruling. You are attempting to try to take advantage of the suppression ruling. You are looking for the protection to [sic] your client and also looking to receive other benefits.

1. We note that despite defense counsel's continuing objection to Moffitt's testimony concerning prior transactions with Pattakos, counsel actually may have waived his right to object to the admission of such testimony by virtue of his own cross-examination of Moffitt wherein he questioned the witness about his past relationship with Pattakos, about the fact that he had been to Pattakos' residence many times before to procure marijuana, and about the fact that Pattakos was Moffitt's "source." (N.T., 6/17/98, at 131–133.)

(N.T., 6/17/98, at 172.) Thus, defense counsel was precluded from making such an argument to the jury.

¶ 17 Appellant's able trial counsel argues that this trial strategy was "perfectly proper" (Appellant's Brief at 19) in that every time a suppression of the evidence is granted, the defendant takes advantage of the ruling in that he or she is able to keep the evidence out of the record. He asserts that he had a right to argue zealously to the jurors that they may only consider what the witnesses testify to, along with the documentary and physical evidence presented in the courtroom. He further argues that he was ethically bound to comment in a light most favorable to his client on the evidence or lack thereof (Appellant's Brief at 20), and that the trial court's prohibition on counsel's reference to the lack of evidence regarding the official funds denied him his strongest argument to the jury. Despite persuasive argument by Appellant's counsel, we must disagree.

¶ 18 Pattakos' counsel took numerous opportunities to comment in closing on the lack of evidence of record on which the jury could render a verdict beyond a reasonable doubt. The trial court, in its wisdom and discretion, ruled that allowing Pattakos' counsel to address directly the absence of the official funds from the evidence of record effectively would permit him to create an inference in the minds of the jury that the money was never recovered. Judge Novak, in his Opinion, stated:

> Suppression is an artificial prophylaxis intended to vindicate a violation of the defendant's constitutionally guaranteed rights. The defendant received the full benefit of that ruling. None of the evidence seized as a result of the defective warrant was introduced before the jury. The defendant was free to argue the paucity of the Commonwealth's evidence, and, in fact, in no less than nine instances in his closing argument, defense counsel did just that.
>
> If you put all of the weight of the Commonwealth evidence over here and all of the weight of the defense evidence over here and the Commonwealth reaches this particular point, that is not enough for you to convict the defendant. Even if it is right here, members of the jury, that is not enough for you to convict the defendant. (N.T. 6/17/98, p. 182.)
>
> Let's look at what the Commonwealth presented. The Commonwealth presented Trooper Conrad Williams. Let's face it, the Commonwealth has not presented any direct evidence to you involving Mr. Pattakos. (N.T. 6/17/98, p. 186.)
>
> Trooper Williams didn't offer any direct evidence whatsoever against my client. (N.T. 6/17/98, p. 187.)
>
> What it comes down to, members of the jury, is that we dispute that they have proven their case. They have failed to prove their case. They have failed to prove anything regarding George Pattakos.
>
> What we have here is a lot of smoke. There is nothing in the Commonwealth's case other than a lot of smoke ... They could have done a lot of things to prove their case. They chose not to. They didn't prove their case ... (N.T. 6/17/98, p. 188.)
>
> Remember that a reasonable doubt can arise from the evidence or out of the lack of evidence. There is no body wire. There is no investigative techniques. There is nothing. The Commonwealth is coming to you with nothing. (N.T. 6/17/98, p. 192.)
>
> Ladies and gentlemen, this is one of those cases. This is one of those cases where we don't have enough. There is not enough credible evidence ... The Commonwealth does not have enough to convince you beyond a reasonable doubt. (N.T. 6/17/98, p. 196.)
>
> Do you have enough based upon what Frank Moffitt told you? Do you have enough—do you believe Frank Moffitt? ... (N.T. 6/17/98, p. 198.)

Why didn't the police do certain things? Why didn't they further investigate this matter? Why didn't they look for proof?

I keep coming back to the reasonable doubt. Has the Commonwealth proven Mr. Pattakos guilty beyond a reasonable doubt? Have they proven George guilty? (N.T. 6/17/98, p. 199.)

I am going to conclude by asking you to consider the credible testimony. Look at the witnesses. Look at the lack of evidence. Look at the reasonable doubt that arises from the lack of evidence. (N.T. 6/17/98, p. 200.)

(Trial Court Opinion, 1/29/99, at 7–9, citing defense counsel's closing remarks.)

¶ 19 Judge Novak appropriately notes, and we agree, that Appellant undeniably received the benefit of the court's suppression ruling in that the suppressed evidence, including the official funds, was not permitted at trial and did not become evidence of record. Pattakos' counsel had ample opportunity to point out to the jury the lack of evidence on the record before them for consideration. To allow Appellant's counsel to draw a specific negative inference in the jury's minds about the existence or absence of the official funds on the record would afford Appellant more than just the benefit of the suppression. It would allow his counsel to improperly draw a misleading inference for the jury, leading them to conclude that the official funds were not found at all.

¶ 20 A review of Pennsylvania case law, as well as that of other jurisdictions, has led us to conclude that there is a dearth of case law on point, presumably because it is rare to find defense counsel seeking to argue the absence of evidence which was not introduced at trial because it was suppressed. However, we find the dissents of Justices Roberts and Flaherty in *Commonwealth v. Smith*, 494 Pa. 518, 521–523, 431 A.2d 975, 976–977 (1981), to be instructive in setting the limits of prosecutorial and defense comment in closing arguments regarding the presence or absence of evidence which has been suppressed.

¶ 21 In *Smith*, the Supreme Court affirmed a murder conviction, holding, *inter alia*, that the prosecutor's reference to suppressed evidence during closing argument (in response to the defense counsel's reference to the absence of evidence of record regarding a struggle) was error but was insufficient to entitle the appellant to a new trial. During closing argument, defense counsel suggested to the jury that, if as the Commonwealth alleged, the victim had been brutally beaten at the scene, the Commonwealth would have presented evidence of a struggle. *Id.* at 976. Such evidence did, in fact, exist, but had been ruled inadmissible, upon defense counsel's motion, by the suppression court on grounds that the evidence was obtained by means of a search conducted without a warrant. In response, the prosecutor stated during closing argument that, "because of a ruling prior to trial, we cannot introduce that evidence." *Id.* at 978. Defense counsel objected to this remark and the trial judge gave a curative instruction to the jury.

¶ 22 The majority opinion in *Smith* does not address the propriety of the comment by defense counsel. However, Justice Roberts, in evaluating the impropriety of the prosecutor's reference to the suppressed evidence, stated that "[t]he prosecutor's use of closing argument as a vehicle for the introduction of suppressed evidence was improper." *Smith*, 494 Pa. at 521, 431 A.2d at 977 (Roberts, J., dissenting). Citing ABA Standards of Professional Conduct, Justice Roberts stated:

[I]t is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice.

*Id.* at 521, 431 A.2d at 977 (citing American Bar Association Project on Standards

for Criminal Justice, Standards Relating to the Prosecution Function § 5.9 (Approved Draft, 1971)). *See Id.,* § 5.8(a); ABA Standards Relating to the Function of the Trial Judge § 5.10(ii) (Approved Draft, 1972); Code of Professional Responsibility, DR 7–106(C)(3).

¶ 23 Justice (now Chief Justice) Flaherty, in a separate dissent, characterizes defense counsel's reference in closing argument to the absence of physical evidence of a struggle on the record when the evidence had been suppressed as "improper argument by defense counsel." *Id.* at 523, 431 A.2d at 977 (Flaherty, J., dissenting). Clearly, Justice Flaherty, as well as Justice Roberts, although dissenting to the ultimate holding of the majority that the appellant was not entitled to a new trial based on the improper comment by the prosecutor, intended to send a message that a reference by either defense counsel or a prosecutor to evidence which has been suppressed is improper argument to the jury.

¶ 24 Furthermore, to permit such a reference by defense counsel necessarily would open the door to allowing the Commonwealth to make reference to suppressed evidence. *See Commonwealth v. Stakley,* 243 Pa.Super. 426, 365 A.2d 1298, 1300 (1976) ("If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.") Indeed, as stated by Justice Flaherty in his dissent in *Smith,*

> the prosecutor's reference to the suppressed evidence would strongly have prejudiced the jury in favor of deductions not legitimately to be derived from the *admissible* evidence. Evidence that is suppressed is not to be drawn to the jury's attention, and mention of such evidence nullifies the effect of the suppression in a manner that could not, under the circumstances, have been cured by an instruction from the court.

Thus, notwithstanding the impropriety of defense counsel's remark, the prosecutor's reference to suppressed evidence further polluted the trial.

431 A.2d at 978.

¶ 25 As the trial court in the instant case correctly noted, allowing such argument would open a "battle of inferences between defense counsel and the prosecutor." (Trial Court Opinion, 1/29/99, at 9.) If this were to occur, the purpose and intent of the Exclusionary Rule would be subverted, and appropriately suppressed evidence would be considered by the jury. Accordingly, for all of the foregoing reasons, we affirm the judgment of sentence imposed by the trial court.[2]

¶ 26 Judgment of Sentence affirmed.

---

**2.** Because we hold that the trial court did not err in its evidentiary determinations, we need not reach the Commonwealth's assertions that any error by the trial court was harmless.