J-S32034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
        :            PENNSYLVANIA
        :
      v.             :
        :
        :
EDGARDO SOBRADO-RIVERA     :
        :
      Appellant    :   No. 242 MDA 2022

Appeal from the PCRA Order Entered January 14, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005882-2016

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:      **FILED: OCTOBER 4, 2022**

Edgardo Sobrado-Rivera appeals from the order, entered in the Court of

Common Pleas of Dauphin County, dismissing his petition filed pursuant to the

Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Upon review,

we affirm.

This Court has previously adopted the following factual summary:

At 9:39 p.m. on August 20, 2016, Harrisburg Police Officer Brian
Carriere received a dispatch to respond to reports of shots fired
and a victim lying on the ground with a gunshot wound to the
head.  Upon arrival at Hummel and Swatara Streets, Officer
Carriere observed a black male[,] lying face down on the
ground[,] who had suffered a gunshot wound to the temple.
Officer Carriere was unable to detect a pulse.  Officer Carriere
found no weapon near the victim.  A woman was kneeling over
the victim.  Police later identified the victim as Henry Liriano-
Aquino.

Harrisburg Police Officer Cynthia Kreiser also responded to the
scene.  Officer Kreiser transported the woman, Shaylee
Concepcion, to the police station to be interviewed.  [] Concepcion

stated that she was in a nearby store with her child when she heard shots and ran outside. [] Concepcion stated that she picked up the victim's phone because she was concerned that someone would pick it up. She then placed the phone back on the street near the victim and called 911 from her own phone.

Harrisburg Police Officer Nicholas Ishman responded to assist with securing the crime scene. Officer Ishman found two nine-millimeter bullet casings six to eight feet from the victim's body. Forensic Investigator Marc McNaughton found a cell phone and an electronic scale in the victim's vehicle. He found no weapons.

Police interviewed neighbors in the area who reported that they heard three or four gunshots. One neighbor reported that she was on her porch near the scene when she heard the gunshots and saw a silver sedan speed away.

Video surveillance tape captured Roberto Hernandez Garcia's presence at the scene, although he initially denied to police that he witnessed the shooting. Garcia spoke to police after police arrested him for his refusal to cooperate. Ultimately, Garcia gave a statement to police in which he stated he met Aquino a few days earlier. On the evening on the shooting, they agreed to meet in the area of Hummel and Swatara Streets because Garcia planned to buy marijuana from Aquino and drink with him. When Garcia approached Aquino's vehicle, Aquino told Garcia to wait at the nearby store, because Aquino had to "take care of a problem." Aquino then left his vehicle, crossed the street and briefly spoke to [Sobrado-Rivera], who was in a vehicle. Garcia could not hear the conversation, but heard Aquino say "stop that shit." Garcia next heard gunshots. Garcia ran from the store, then returned fifteen to twenty minutes later. Garcia unequivocally identified [Sobrado-Rivera] as the shooter.

Forensic pathologist Wayne Ross, M.D., conducted an autopsy of Aquino. [Doctor] Ross determined that Aquino suffered two gunshot wounds, one to the right side of the head, and the other to the left thigh. [Doctor] Ross categorized the gunshot wounds as distant, that is, having been fired from a distance of three to four feet or more. [He] opined that the gunshot wound to the thigh was potentially lethal, and that the gunshot to the head caused [Aquino]'s death.

The autopsy further revealed a bullet lodged in the victim's tongue, which Dr. Ross retrieved and provided to police for documentation. Ballistics testing revealed that the bullet was discharged from a nine-millimeter gun and that both nine-millimeter casings found at the scene were discharged from the same weapon.

[Sobrado-Rivera's] former girlfriend, Tiffany Brown, owned the Mitsubishi Eclipse [that Sobrado-Rivera] drove on the night of the shooting. Brown gave police [Sobrado-Rivera's] name as the person who drove her car that night. When Brown told [Sobrado-Rivera] she had spoken to police and wanted her car back, [he] told her she should have reported the car stolen, and that he "could come down and blow her head off."

[Sobrado-Rivera's] wife, Denisse Rivera, testified that on the day of the shooting, while riding in the car with [Sobrado-Rivera] and her son on the way to a family gathering, she saw Aquino drive into their neighborhood, pointing at their vehicle. [Sobrado-Rivera and Aquino] both stopped and exited their vehicles. They had a brief conversation, which Ms. Rivera could not hear. [Sobrado-Rivera] said nothing to his wife about the conversation. Later that evening, after they returned home, Ms. Rivera saw a text message in Spanish on [Sobrado-Rivera's] phone which she believed stated something to the effect that four males would be coming to their house. Ms. Rivera did not see any threats in the text message. When asked about the message, [Sobrado-Rivera] said, "It's him." [Sobrado-Rivera] then left the house [and did not return until] around 11:00 p.m. that night. He told his wife that he met up with the guy and that "it didn't go good." Ms. Rivera knew what had occurred, as [Sobrado-Rivera] appeared shaken.

[Sobrado-Rivera] testified that he first met Aquino at a pizza shop ten days before the shooting. The two agreed to do business selling drugs and spoke about prices and supply. Prior to the shooting, Aquino sold [Sobrado-Rivera] 45 to 50 grams of heroin, for which [Sobrado-Rivera] was to pay $5,000[.00], over time. Five or six days after Aquino supplied [Sobrado-Rivera] with the heroin, Aquino began pressuring [Sobrado-Rivera] for payment. [Sobrado-Rivera] told Aquino that he would not be conducting business that week, as he was getting married. Between August 15 and August 20, [Sobrado-Rivera] and Aquino exchanged texts and phone calls. Aquino told [Sobrado-Rivera] that he was

receiving pressure for money from people in New York. [Sobrado-Rivera] testified that he began carrying a gun.

After receiving the text from Aquino while at home on August 20, 2016, [Sobrado-Rivera] told Aquino he would meet him at Swatara and Hummel Streets. [Sobrado-Rivera] testified that Aquino told him that he was finished giving him breaks, and was going to call his New York people and send them to [Sobrado-Rivera's] house. [Sobrado-Rivera] testified that Aquino then looked at his phone as if to make a call and stated that he was going to make [Sobrado-Rivera] "a believer." [Sobrado-Rivera] testified that he felt he had no choice other than to shoot him. [Sobrado-Rivera] stated that Aquino did not threaten him and did not have a gun. [Sobrado-Rivera] shot Aquino twice, then got in his car and left.

Sometime in the early hours of the following morning, [Sobrado-Rivera] told his wife that he shot the man they saw earlier that day. Ms. Rivera and [Sobrado-Rivera] drove her child to the child's father's house in Allentown and stayed in a hotel on their return trip to Harrisburg.

On August 26, 2016, while conducting surveillance of [Sobrado-Rivera's] address, Harrisburg Police Sergeant Terry Wealand saw [Sobrado-Rivera] and his wife arrive in separate vehicle. Sergeant Wealand arrested [Sobrado-Rivera] and [Ms. Rivera].

***Commonwealth v. Sobrado-Rivera***, 220 A.3d 632 (Pa. Super. 2019)

(unpublished memorandum decision at **2-4).

Sobrado-Rivera was subsequently charged with homicide,[1] recklessly endangering another person,[2] person not to possess firearms,[3] and firearms not to be carried without a license.[4] The person not to possess firearms charge

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] ***Id.*** at § 2705.

[3] ***Id.*** at § 6106.

[4] ***Id.*** at § 6106(a)(1).

was severed for trial. On August 18, 2017, a jury found Sobrado-Rivera guilty of the above-mentioned offenses. The trial court immediately sentenced Sobrado-Rivera to an aggregate sentence of life imprisonment. Sobrado-Rivera filed a timely post-sentence motion, which was denied. Sobrado-Rivera filed a timely direct appeal to this Court and, on July 3, 2019, this Court affirmed Sobrado-Rivera's judgment of sentence. *See id.* On December 26, 2019, our Supreme Court denied Sobrado-Rivera's petition for allowance of appeal. *See Commonwealth v. Sobrado-Rivera*, 222 A.3d 384 (Pa. 2019) (Table).

On January 16, 2020, Sobrado-Rivera filed the instant timely, *pro se*, PCRA petition. The PCRA court appointed Michael Oresto Palermo, Esquire, who filed an amended PCRA petition on July 31, 2020. On September 16, 2020, the Commonwealth filed a response to Sobrado-Rivera's petition. Attorney Palermo filed a second amended PCRA petition, after which the Commonwealth filed a second response. On June 17, 2021, the PCRA court filed notice of its intent to dismiss Sobrado-Rivera's PCRA petition pursuant to Pa.R.Crim.P. 907. Neither Sobrado-Rivera nor Attorney Palermo filed a response and, subsequently on January 11, 2022, the PCRA court dismissed Sobrado-Rivera's PCRA petition. On February 10, 2022, Attorney Palermo filed a timely notice of appeal on Sobrado-Rivera's behalf.

On April 26, 2022, Sobrado-Rivera filed, *pro se*, an application for relief with this Court, in which he sought permissoin to proceed *pro se*. *See* Application to Proceed *Pro Se*, 4/26/22, at 1-3. Subsequently, on April 28,

2022, this Court, by *per curiam* Order, remanded the case to the PCRA court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). **See** Order, 4/28/22, at 1, to determine whether Sobrado-Rivera's waiver of counsel was knowing, intelligent, and voluntary. **See id.**

On remand, the PCRA court conducted the **Grazier** hearing, at which Sobrado-Rivera requested that Attorney Palermo be removed as his PCRA counsel and requested the appointment of new counsel. **See** N.T. Hearing, 5/19/22, at 1-18. On May 24, 2022, the PCRA court removed Attorney Palermo and appointed Kristen Weisenberger, Esquire, to represent Sobrado-Rivera on appeal. The case now returns to this Court.

Sobrado-Rivera raises the following claims for our review:

[] Whether the [PCRA] court erred in dismissing [Sobrado-Rivera]'s PCRA [petition] without a hearing where [Sobrado-Rivera] presented a meritorious argument that trial counsel's unreasonable actions created unfair prejudice [by:]

  1. Failure to [r]eview [d]iscovery.

  2. Failure to [f]ile [a] [m]otion to [s]uppress.

Brief for Appellant, at 4.

When reviewing the [dismissal] of a PCRA petition, our scope of review is limited by the parameters of the act. Our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Moreover, in general we may affirm the decision of the [PCRA] court if there is any basis [in] the record to support the [PCRA] court's action; this is so even if we rely on a different basis in our decision to affirm.

*Commonwealth v. Heilman*, 867 A.2d 542, 544 (Pa. Super. 2005) (quotations and citations omitted).

Both of Sobrado-Rivera's claims challenge the effectiveness of trial counsel. Generally, counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[:] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

In his first claim, Sobrado-Rivera raises three sub-issues, which we address separately. In his first sub-issue, Sobrado-Rivera argues his trial counsel was ineffective in failing to properly review discovery materials for trial. *See* Brief for Appellant, at 18-28. In particular, Sobrado-Rivera contends that trial counsel was unprepared for trial because he was unaware of the text message between Sobrado-Rivera and Aquino regarding the "four men" Aquino purportedly threatened to send to Sobrado-Rivera's home.[5] *Id.*

---

[5] By way of background, Sobrado-Rivera's defense at trial was premised, in part, upon the notion that Aquino had sent threatening messages to Sobrado-
*(Footnote Continued Next Page)*

Sobrado-Rivera posits that he is, thus, entitled to a remand for an evidentiary hearing to determine whether his trial counsel had reviewed the text messages in question, and whether his trial counsel had reviewed the text messages with Sobrado-Rivera. *Id.* We disagree.

Our review of the record reveals that both Sobrado-Rivera and his wife testified that Aquino had sent Sobrado-Rivera a message in Spanish, which indicated that Aquino intended to send four men to their home. *See* N.T. Jury Trial Volume 2, 8/17/17, at 135-36, 138-41, 172-73, 178-81, 199-200, 210-16. In the history set forth by this Court in Sobrado-Rivera's prior appeal, we stated wife did not "see any threats in the message." *See Sobrado-Rivera*, *supra*. In rebuttal, the Commonwealth called Detective Libertad Ramos to testify about the text message from Aquino's phone. N.T. Jury Trial Volume 2, 8/17/17, at 219-29. Detective Ramos, a native Spanish-speaker, read the text message and told the jury that she found nothing threatening in the message. *Id.* Rather, Detective Ramos translated the message as follows:

> I have four people that I can't sell to because you have met at a standstill. You need to come on with it and give me what you need – what you need to do. I'm not the one that's the problem. It's the people that are higher up that are giving me pressure.

*Id.* at 220.

Thus, it is clear from our review of the record that trial counsel was aware of the text message in question, because Detective Ramos, Sobrado-

---

Rivera. Of particular import, Sobrado-Rivera contends that a message from Aquino detailed that Aquino would send four men to Sobrado-Rivera's home because Sobrado-Rivera was late on a $5,000.00 heroin payment.

Rivera, and his wife were all testifying about the same text message. *See Sobrado-Rivera*, *supra* (wherein this Court previously addressed claims regarding Detective Ramos's testimony and concluded that trial counsel was aware of text message because Sobrado-Rivera, his wife, and Detective Ramos testified regarding same text message); *see also* N.T. Jury Trial Volume 2, 8/17/17, at 135-36, 138-41, 172-73, 178-81, 199-200, 210-16, 219-29. Despite Sobrado-Rivera's assertions, it is clear that the jury heard Sobrado-Rivera's interpretation of the text, as well as those of his wife and Detective Ramos. *See id.* Thus, it was within the province of the jury to decide what weight to afford their respective testimonies. The contention that trial counsel rendered ineffective assistance by, essentially, failing to prepare an English version of that text message is of no moment, where trial counsel conducted direct examination of both Sobrado-Rivera and his wife regarding the very same text message. Moreover, we further observe that trial counsel was able to cross-examine Detective Ramos and, subsequently, recalled Sobrado-Rivera in rebuttal to Detective Ramos, at which time Sobrado-Rivera testified that the text message was a threat. *See* N.T. Jury Trial Volume 2, 8/17/17, at 222-29; (wherein defense counsel cross-examined Detective Ramos and highlighted that "four men" were mentioned); *id.* at 229-32 (wherein Sobrado-Rivera was recalled and testified Aquino's text message conveyed a threat). We conclude that Sobrado-Rivera cannot establish the requisite prejudice merely because the Commonwealth offered Detective

Ramos's rebuttal testimony. Accordingly, Sobrado-Rivera is not entitled to relief on this claim. *See Holt*, *supra*.

In his second sub-issue, Sobrado-Rivera asserts that his trial counsel rendered ineffective assistance of counsel by failing to raise a *Brady*[6] challenge to these text messages. *Id.* at 29-30.

Preliminarily, we conclude that Sobrado-Rivera has waived this claim for our review. Sobrado-Rivera's entire discussion of this claim is contained in one-and-one-half pages. Other than a boilerplate citation to *Brady*, Sobrado-Rivera provides no argument and cites to no additional case law or support in the record. *See* Brief for Appellant, at 29-30; *see also* Pa.R.A.P. 2119(a) (appellant must support argument with "such discussion and citation of authorities as are deemed pertinent"); *Commonwealth v. Johnson*, 985 A2d 915, 924 (Pa. 2009) ("[W]here an appellate brief . . . fails to develop the issue in any . . . meaningful fashion capable of review, that claim is waived."); *id.* at 925 ("It is not the role of this Court to formulate [an a]ppellant's arguments for him."). Accordingly, we conclude that Sobrado-Rivera's second sub-issue is waived.

Moreover, even if Sobrado-Rivera had not waived this claim, we would conclude that it lacks merit. While Sobrado-Rivera is correct that this claim is not previously litigated because ineffective assistance of counsel claims are distinct from those alleging trial court error, this Court nevertheless addressed

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

the merits of the underlying **Brady** issue in our prior decision and determined it lacked merit. **See Sobrado-Rivera**, **supra**. Thus, because the underlying claim lacks merit, we cannot conclude that his trial counsel rendered ineffective assistance by failing to raise it. **See Commonwealth v. Tedford**, 960 A.2d 1, 31 (Pa. 2008) (layered ineffective assistance of counsel claim fails where underlying **Brady** claim lacks merit). Accordingly, Sobrado-Rivera is entitled to no relief. **See Holt**, **supra**.

In his third sub-issue, Sobrado-Rivera argues, for the first time on appeal, that Attorney Palermo rendered ineffective assistance of counsel by failing to adequately and accurately plead and prove his claims in the two amended PCRA petitions. Brief for Appellant, at 29. Sobrado-Rivera asserts that Attorney Palermo's deficient filings caused the dismissal of his PCRA petition without a hearing and the lack of a PCRA hearing on his evidentiary claims prejudiced him. Brief for Appellant, at 18 n.1, 29.

At the outset, we note that Sobrado-Rivera has again failed to adequately develop this claim for our review. Sobrado-Rivera's entire discussion of this claim is contained within a single paragraph and provides only a bald assertion that Attorney Palermo rendered such deficient advocacy that it prejudiced Sobrado-Rivera. **See** Brief for Appellant, at 29; **see also**

Pa.R.A.P. 2119(a); *Johnson*, *supra*. Accordingly, we conclude that Sobrado-Rivera's third sub-issue is waived.[7]

In his second claim, Sobrado-Rivera contends that his trial counsel rendered ineffective assistance of counsel by failing to file a motion to suppress the above-mentioned text messages. *See* Brief for Appellant, at 30-32. In particular, Sobrado-Rivera argues that the PCRA court erred by failing to hold an evidentiary hearing regarding how the Commonwealth obtained the messages. *Id.* at 33-37. We disagree.

Generally, "[t]he failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel." *Commonwealth v. Metzger*, 441 A.2d 1225, 1228 (Pa. 1981). "However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move." *Id.* "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability that the verdict would have been more favorable." *Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016) (citation omitted).

---

[7] We observe that PCRA petitioners may challenge PCRA counsel's effectiveness for the first time on direct appeal. *See Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). Nevertheless, a PCRA petitioner is still required to comply with our briefing rules and to adequately plead and prove his claims on appeal.

Sobrado-Rivera has failed to establish that this claim has satisfied any of the ineffective assistance of counsel prongs and has similarly failed to demonstrate that a suppression motion would have been meritorious.[8] At the outset, we observe that the text messages Detective Ramos read were from the **victim's** phone, not from Sobrado-Rivera's phone. **See** N.T. Jury Trial Volume 2, 8/17/17, at 217-18 (wherein prosecutor states "We have the texts from the **victim's cell phone**, and it isn't quite the way [Sobrado-Rivera] put it.") (emphasis added). Sobrado-Rivera has failed to cite to any case law, or articulate any argument, that would support suppression of text messages found in the murder victim's phone. **See Metzger**, **supra**. Moreover, even if a suppression motion would have been meritorious, Sobrado-Rivera nevertheless opened the door for the Commonwealth to introduce rebuttal evidence of the text messages, as he introduced the text messages in question as evidence through his own testimony and his wife's testimony. **See** N.T. Jury Trial Volume 2, 8/17/17, at 135-36, 138-41, 172-73, 178-81, 199-200, 210-16. By introducing this testimony and the text messages, Sobrado-Rivera opened the door for the Commonwealth to rebut his testimony with the **same** text messages, albeit from the victim's phone, and with testimony from Detective Ramos. **See id.** at 219-29 (wherein Detective Ramos translated

---

[8] Additionally, we note that Sobrado-Rivera has arguably waived this claim for our review by failing to cite to any case law or facts of record that support his bald assertion that the Commonwealth violated his rights in obtaining this evidence. **See** Pa.R.A.P. 2119(a); **Johnson**, **supra**. Nevertheless, Sobrado-Rivera's claim is belied by a cursory review of the record, as discussed *infra*.

text messages from Spanish to English); *see also Commonwealth v. Stakley*, 365 A.2d 1298, 1299-1300 (generally, defendants "open the door" by delving into otherwise objectionable testimony and Commonwealth may probe further into that topic). Accordingly, Sobrado-Rivera is not entitled to relief, and we affirm the PCRA court's order dismissing Sobrado-Rivera's PCRA petition. *See Holt*, *supra*; *Heilman*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2022