J. A03036/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DEREK J. WIGGINS, | : | |
| | : | |
| Appellant | : | No. 440 MDA 2014 |

Appeal from the Judgment of Sentence February 10, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division No(s).: CP-36-CR-0003291-2012

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 09, 2015**

Appellant, Derek J. Wiggins, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas following a jury trial and his convictions for Rape of a Child,[1] Involuntary Deviate Sexual Intercourse with a Child,[2] Indecent Assault,[3] Corruption of Minors,[4] and Unlawful Contact with a Minor.[5]  Appellant contends the trial court erred in

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(c).

[2] 18 Pa.C.S. § 3123(b).

[3] 18 Pa.C.S. § 3126(a)(7).

[4] 18 Pa.C.S. § 6301(a)(1)(ii).

[5] 18 Pa.C.S. § 6318(a)(1).

(1) its rulings on several evidentiary issues and (2) improperly refusing a requested jury instruction. He challenges, pursuant to **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014), the imposition of a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718, which was declared unconstitutional. We affirm the convictions below, vacate the judgment of sentence, and remand for resentencing.

We adopt the facts set forth by the trial court's opinion. **See** Trial Ct. Op., 4/28/14, at 1-4. On February 10, 2014, the court sentenced Appellant to a, aggregate total of ten to twenty years' imprisonment. This timely appeal followed. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issues on appeal:

> I. Did the trial court err when it ruled that the defense was precluded from questioning [H.F.,] the child victim, her Mother, and her Stepmother about the fact that the child had previously accused a neighbor with the same name as Appellant of asking to perform a sexual act on her?
>
> II. Did the trial court improperly permit the prosecutor to vouch for the veracity of the child witness by allowing her to lead the witness, on redirect examination, to state that during her prior testimony she had answered in the affirmative every time counsel had ended a question with the word "right?"
>
> III. Did the court improperly preclude the defense from introducing evidence to show that the child victim's Great-Grandfather had pled guilty to three counts of molestation involving young girls to show: (1) that he might have been the perpetrator in the instant case; and (2) to impeach the

testimony of Michele Windle and to show that members of the Cornelius family were familiar with the processes and consequences of child abuse investigations?

IV. Did the trial court improperly prevent the defense from questioning the child's Mother about the contents of a diary she maintained during the time when the child victim was allegedly abused?

V. Did the trial court improperly rule that the defense had opened the door to questioning regarding Appellant's discharge from the military?

VI. Did the trial court err in refusing to give requested Pennsylvania Standard Criminal Jury Instruction 4.08A, Impeachment or Substantive Evidence—Inconsistent Statement, where the child victim, whose credibility was dispositive to the outcome of this case, made numerous prior inconsistent statements?

Appellant's Brief at 5-6.

At oral argument before this Court, Appellant requested permission to file a post-submission communication. This Court granted the request. Order, 2/6/15. Appellant raises the following issue in its post-submission communication: "Is Appellant entitled to a new sentencing hearing based on this Court's determination, in **Commonwealth v. Wolfe**, [ ] that 42 Pa.C.S. § 9718, the sentence under which he was sentenced, is unconstitutional?"[6] Appellant's Post-Submission Communication, 2/13/15, at 5 (unpaginated).

---

[6] The statute provided for mandatory sentences. "Application of a mandatory sentencing provision implicates the legality, not the discretionary, aspects of sentencing." **Commonwealth v. Dixon**, 53 A.3d 839, 842 (Pa. Super. 2012) (citation omitted). Appellant challenges the legality of his sentence. "[L]egality of sentencing claims *per se* can be raised for the first time on direct appeal." **Commonwealth v. Brown**, 71

We summarize Appellant's arguments for his first five issues. Appellant avers that the fact that H.F. claimed another individual with the same name as his abused her was relevant to the fact-finder's assessment of her credibility and should not have been precluded from evidence. Appellant argues the court improperly permitted the prosecutor to bolster H.F.'s credibility by explaining the inconsistencies in her testimony were due to counsel's phrasing of his questions in prior proceedings. Appellant claims the court erred in precluding evidence that H.F.'s great-grandfather pled guilty to three counts of molestation of young girls. He avers that this evidence was relevant to the theory that there could have been an alternate perpetrator. Appellant contends the court should have permitted the defense to question H.F.'s mother about the contents of her diary in which she observed changes in H.F.'s behavior after visits with her biological father and his family. Appellant argues the trial court erred in permitting the Commonwealth to introduce evidence that he was demoted from the rank of

A.3d 1009, 1016 (Pa. Super. 2013), *appeal denied*, 77 A.3d 635 (Pa. 2013). We note the Commonwealth avers that it filed a petition for allowance of appeal in **Wolfe**, which is pending before the Supreme Court of Pennsylvania. **See** Commonwealth's Post Submission Communication, 2/20/15, at 3. This Court has held "even though [a] petition for allowance of appeal was pending before the Pennsylvania Supreme Court, [the] decision remains binding precedent as long as the decision has not been overturned by our Supreme Court[.]" **Commonwealth v. Santiago**, 980 A.2d 659, 666 n.6 (Pa. Super. 2009) (citation omitted).

Corporal to Lance Corporal and not permitted to re-enlist in the Marine Corps.[7]  We hold no relief is due.

On these issues, our standard of review is as follows:

> A trial court has broad discretion to determine whether evidence is admissible and trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion.  Accordingly, a ruling admitting evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous."

*Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super.) (citations omitted), *appeal denied*, 80 A.3d 775 (Pa. 2013).

We review the court's ruling on a motion *in limine* as follows:

> "[A] motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, [therefore] our standard of review . . . is the same as that of a motion to suppress."  The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion.

*Commonwealth v. Rosen*, 42 A.3d 988, 993 (Pa. 2012) (citations omitted).

As to these issues, after careful consideration of the record, the parties' briefs, and the decision of the Honorable Jeffrey D. Wright, we find

---

[7]  We note Appellant raised this issue before trial and the court reserved ruling on it.  N.T., 10/29/13 at 36-37.

no relief is due and adopt the trial court's well-reasoned opinion.[8]  **See** Trial Ct. Op. at 5-14 (holding H.F.'s allegations about a neighbor in Kansas, also named Derek, were irrelevant; Commonwealth did not ask H.F. leading questions, rather it attempted to rehabilitate H.F.; evidence of H.F.'s Great-Grandfather's charges, and references to them in Mother's diary, were irrelevant and prejudicial, as there was no established connection between H.F. and her Great-Grandfather; and questions regarding Appellant's discharge from the military were properly permitted as defendant's counsel opened the door).  We discern no abuse of discretion.  **See Rosen**, 42 A.3d at 993; **Huggins**, 68 A.3d at 966;.

Next, Appellant contends the trial court erred in refusing to give requested Pennsylvania Standard Criminal Jury Instruction 4.08A, Impeachment or Substantive Evidence—Inconsistent Statement.  Appellant avers the trial court erred in stating counsel had waived[9] this issue because "counsel had already lodged his objection to the court's refusal to issue the requested charge . . . ."  Appellant's Brief at 32 n.6.

As a prefatory matter, we consider whether Appellant has preserved this issue for our review.  In **Commonwealth v. Parker**, 104 A.3d 17 (Pa.

---

[8] We note typographical errors in the citations for **Commonwealth v. Petrillo**, 19 A.2d 288 (Pa. 1941) and **Commonwealth v. Myers**, 621 A.2d 1009 (Pa. Super. 1993).  **See** Trial Ct. Op. at 12, 15.

[9] We note the trial court addressed the issue and held it to be meritless, notwithstanding the fact that it found waiver.  **See** Trial Ct. Op. at 14-16.

Super. 2014), this Court found the appellant had waived his objection to the jury charge, although he objected at the charging conference, because he failed to object after the court read the charge to the jury. *Id.* at 29. This Court opined:

> In order to preserve a claim that a jury instruction was erroneously given, the Appellant must have objected to the charge at trial. *See Commonwealth v. Spotz*, [ ] 84 A.3d 294, 318 n. 18 ([Pa.] 2014) (citations omitted); Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) ("**No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate**."). As our Supreme Court has explained:
>
>> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. **Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive**, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, **it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review** of an otherwise correctable issue.
>
> *Commonwealth v. Pressley*, [ ] 887 A.2d 220, 224 ([Pa.] 2005) (footnotes and citations omitted); *see Commonwealth v. Garang*, 9 A.3d 237, 244–245 (Pa. Super. 2010) (citations omitted); *Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted).

*Id.* (emphases added).

In the case *sub judice*, at the conclusion of the jury charge, the court asked counsel "anything that wasn't covered?" N.T., 11/1/13, at 664. Counsel stated: "No. There was nothing that wasn't covered." **Id.** Having failed to raise a specific objection after the charge was given and before the jury retired to deliberate, we find the issue waived. **See Parker**, 104 A.3d at 29.

Lastly, Appellant contends that he is entitled to a new sentencing hearing based on this Court's determination in **Wolfe** that 42 Pa.C.S. § 9718,[10] the statute under which he was sentenced, is unconstitutional. Our

---

[10] Section 9718 provides, *inter alia*, as follows:

> **(a) Mandatory sentence.—**
>
> (1) A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows:
>
> 18 Pa.C.S. § 2702(a)(1) and (4) (relating to aggravated assault)--not less than two years.
>
> 18 Pa.C.S. § 3121(a)(1), (2), (3), (4) and (5) (relating to rape)--not less than ten years.
>
> 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse)--not less than ten years.
>
> 18 Pa.C.S. § 3125(a)(1) through (6) (relating to aggravated indecent assault)--not less than five years.
>
> *       *       *

standard of review of questions involving the legality of a sentence is well-

settled:

> "A challenge to the legality of a sentence . . . may be entertained as long as the reviewing court has jurisdiction." It is also well-established that "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." "An **illegal sentence must be vacated**." "Issues relating to the legality of a sentence are questions of law[.] . . . Our

---

> (3) A person convicted of the following offenses shall be sentenced to a mandatory term of imprisonment as follows:
>
> 18 Pa.C.S. § 3121(c) and (d)--not less than ten years.
>
> 18 Pa.C.S. § 3125(a)(7)--not less than five years.
>
> 18 Pa.C.S. § 3125(b)--not less than ten years.
>
> * * *
>
> **(c) Proof at sentencing.**—The provisions of this section shall not be an element of the crime, and notice of the provisions of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S. § 9718(a)(1), (3), & (c). The **Wolfe** Court noted "In [**Alleyne v. United States**, 133 S. Ct. 2151 (2013)]*,* the Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury" and must be found beyond a reasonable doubt. [**Id.**] at 1263." **Wolfe**, 106 A.3d at 802.

standard of review over such questions is *de novo* and our scope of review is plenary."

**Wolfe**, 106 A.3d at 801-02 (citations omitted and emphasis added).

In **Wolfe**, as in the instant case, the appellant was sentenced under the mandatory minimum statute pursuant to Section 9718. **Id.** at 802. This Court opined:

> [T]he mandatory minimum statute in this case contains the same format as the statutes struck down as facially unconstitutional in [**Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*)] and [**Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014)]. **See** 42 Pa.C.S.A. §§ 9712(a), 9712(c), 9712.1(a), 9712.1(c), 9713(a), 9713(c), 9718(a), 9718(c). Following **Newman's** instructions, we are required to conclude that **Section 9718 is also facially unconstitutional**.

**Id.** at 805 (emphasis added). This Court found that because Section 9718 is facially unconstitutional, "we [were] compelled to conclude that the trial court imposed an illegal sentence when it imposed the mandatory minimum sentence." **Id.** at 806. Accordingly, the **Wolfe** Court vacated the judgment of sentence and remanded for resentencing. **Id.** Analogously, in the case *sub judice*, because the trial court imposed an illegal sentence based upon Section 9718, we vacate the judgment of sentence and remand for resentencing. **See id.**

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA :

v. :   No. 3291-2012

DEREK J. WIGGINS :



### OPINION

BY: WRIGHT, J.                                                    April 28, 2014

This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. Defendant, Derek Wiggins, claims that this Court issued improper rulings on numerous evidentiary issues that arose during his trial, and that the Court provided the jury with incomplete instructions. A review of the record and applicable law demonstrates that Defendant's claims lack merit and, therefore, his appeal should be dismissed.

### BACKGROUND

J████ F███ and W███ C█████ met and began dating in 2003, and in May of 2005, while both were still teenagers, J████ gave birth to a daughter, H.F. (N.T. Jury Trial Vol. 3, 277:12-25.) Eventually, J████ and W███ broke up and a custody agreement was put into place. (N.T. Jury Trial Vol. 3, 278:11-23.)

In December of 2006, J█████ started to date Defendant, Derek Wiggins. (N.T. Jury Trial Vol. 3, 283:7-14.) J█████ and Defendant married in March of 2007, and in 2009, J█████ gave birth to a second daughter, Elena. (N.T. Jury Trial Vol. 3, 284:6-18.) That same year, W███ married, enlisted in the Army, and relocated to Kansas. (N.T. Jury Trial Vol. 2, 187:4 – 188:24.) In June of 2010, J█████ and Defendant purchased a home located at 303 Banyan Circle in Lancaster. (N.T. Jury Trial Vol. 3, 284:22-25.) Given the distance between their

1

residences, J████ and W███ agreed that H.F. would live with her mother during the school year and spend summers with W███ and his wife, Brandy. (N.T. Jury Trial Vol. 2, 189:23 – 190:9.)

In July of 2011, H.F., then six years old, traveled to Kansas to visit W███ while he was on block leave from the military. (N.T. Jury Trial Vol. 2, 190:16-25.) At the end of her stay, W███, Brandy, and H.F. drove back from Kansas to visit W███'s mother, Michelle Windle, in Thomasville, Pennsylvania. (N.T. Jury Trial Vol. 2, 191:5-24.) The family planned to stay with Michelle for a week, then travel to Virginia to see Brandy's mother. (N.T. Jury Trial Vol. 3, 249:2-5.)

While the family was staying at Michelle's home, H.F. disclosed to Brandy that Defendant, whom she referred to as "Daddy Derek," had been sexually abusing her. (N.T. Jury Trial Vol. 3, 251:7 – 252:3.) Specifically, H.F. told Brandy that Defendant liked it when she put her mouth on his penis. (N.T. Jury Trial Vol. 3, 252:19 – 253:3.) Shocked, Brandy asked H.F. to repeat her statements to W███. (N.T. Jury Trial Vol. 3, 253:9-10.) H.F. told her father that Defendant sexually assaulted her in her bedroom and in the bathroom of their home. (N.T. Jury Trial Vol. 2, 193:20-22.) Additionally, H.F. revealed that Defendant would "pee white stuff" into toilet paper during the encounters, and that Defendant put his mouth on her vagina. (N.T. Jury Trial Vol. 2, 193:23 – 194:11.)

After H.F. was finished disclosing the abuse to her father, W███ instructed Brandy to take her to talk to Michelle, who was next door at a friend's home preparing dinner for the family. (N.T. Jury Trial Vol. 3, 253:15-21.) When confronted by Michelle, H.F. revealed, once again, that Defendant made her suck on his penis. (N.T. Jury Trial Vol. 3, 386:13 – 387:6.)

2

W███████discussed H.F.'s statements with his mother, then contacted J██████and York County Children and Youth Services ("YCCYS"). (N.T. Jury Trial Vol. 2, 195:12 – 196:5.)

The following day, YCCYS and the Northern Regional Police Department responded to Michelle's home to speak with the family. (N.T. Jury Trial Vol. 3, 388:7-10.) On July 25, 2011, Detective Tricia Mazur of the Manor Township Police received a report from YCCYS assigning her to H.F.'s case. (N.T. Jury Trial Vol. 4, 437:22 – 438:18.) In order to clarify the extent of the abuse, Detective Mazur scheduled a forensic interview for H.F. at the Lancaster County Children's Alliance on July 27, 2011. (N.T. Jury Trial Vol. 4, 438:15-18.)

During her interview, and in subsequent testimony and statements, H.F. revealed the details of the sexual abuse she had endured. H.F. stated that one night, after her family moved into the house at 303 Banyan Street, she attempted to use the bathroom and found that Defendant was inside. (N.T. Jury Trial Vol. 2, 90:6-13.) Defendant invited her to join him in the bathroom, and when she went in, H.F. observed that he was looking at something on the computer. (N.T. Jury Trial Vol. 2, 90:12-13.) Defendant put his computer aside and asked H.F. to touch his penis. (N.T. Jury Trial Vol. 2, 90:13-16.) Although she initially resisted, H.F. complied when Defendant threatened to tell J██████about the encounter. (N.T. Jury Trial Vol. 2, 91:4-10.) Defendant instructed H.F. to move her hands, and eventually her mouth, up and down over his penis. (N.T. Jury Trial Vol. 2, 91:4 – 93:3.) After this initial incident, H.F. revealed that Defendant made her touch his penis on numerous occasions. (N.T. Jury Trial Vol. 2, 93:4-9.)

Eventually, Defendant's conduct escalated to include vaginal penetration. H.F. disclosed that one evening, while her mother was at work, Defendant gave her a bath. (N.T. Jury Trial Vol. 2, 93:15-17.) Afterwards, Defendant told H.F. to go to her room to dry off. (N.T. Jury Trial Vol. 2, 93:17-18.) While H.F. was still undressed, Defendant entered her room and told her to

3

lean down over the bed. (N.T. Jury Trial Vol. 2, 93:10 – 94:17.) Defendant then inserted his penis into her vagina. (N.T. Jury Trial Vol. 2, 97:19-25.) Defendant promised H.F. that he would stop abusing her after a family beach trip in the summer of 2011, and asked her to remind him of his promise. (N.T. Jury Trial 2, 95:2-16.)

Following H.F.'s forensic interview, on August 5, 2011, Julie Stover, a nurse practitioner and expert in child sexual abuse, performed a physical examination of H.F. at the Children's Alliance. (N.T. Jury Trial Vol. 2, 226:12-23.) While the results of H.F.'s examination were normal, Ms. Stover cautioned that the mucosal tissue lining the vagina and rectum typically heals within seventy-two hours of injury, and that visible scarring can only be observed in 5% of cases. (N.T. Jury Trial Vol. 1, 231:24 – 233:25.)

As a result of H.F.'s statements, on May 17, 2012, Detective Mazur charged Defendant with one count each of Rape of a Child,[1] Involuntary Deviate Sexual Intercourse with a Child,[2] Indecent Assault,[3] Corruption of Minors,[4] and Unlawful Contact with a Minor.[5] (N.T. Jury Trial Vol. 4, 442:9-20.) Following a three day jury trial, on November 1, 2013, Defendant was convicted of all charges and a Pre-Sentence Investigation was ordered. (N.T. Jury Trial Vol. 5, 672:4-16; 677:8-11.) On February 10, 2014, Defendant was sentenced to a total aggregate of 10 – 20 years of incarceration.

On March 7, 2014, Defendant filed a timely Notice of Appeal to the Superior Court, and on March 28, 2014, Defendant submitted his Concise Statement of Errors Complained of on Appeal. In his Statement, Defendant claims that this Court issued improper rulings on numerous

---

[1] 18 Pa.C.S.A. § 3121(c).
[2] 18 P.S. § 3123(b).
[3] 18 Pa.C.S.A. § 3216(a)(7).
[4] 18 P.S. § 6301(a)(1)(ii).
[5] 18 Pa.C.S.A. § 6318(a)(1).

4

evidentiary issues that arose during his trial, and that the Court provided the jury with incomplete instructions.

## DISCUSSION

I.    **The Trial Court Properly Prohibited Defense Counsel from Questioning H.F., J████ and Brandy about Irrelevant and Prejudicial Hearsay Statements.**

Defendant's first claim is that the Court improperly prevented defense counsel from questioning H.F., J████ and Brandy about a comment H.F. made to her stepmother. Specifically, H.F. told Brandy that a neighbor in Kansas, who was also named Derek, said that he wanted to "lick her butt." (N.T. Jury Trial Vol. 2, 170:22 – 171:15.) Brandy relayed this information to J████, who reported H.F.'s comments to the law enforcement officers handling her case. (N.T. Jury Trial Vol. 2, 171:16-18; 180:4-12.) During trial, lead defense counsel Attorney Ronald Greenblatt attempted to question H.F. about the allegations, and Assistant District Attorney Karen Mansfield objected asserting that the statements were irrelevant. (N.T. Jury Trial Vol. 2, 170:18 – 171:20.) The Court sustained the Commonwealth's objection and precluded the line of questioning. (N.T. Jury Trial Vol. 2, 171:16 –172:2.)

It is axiomatic that only relevant evidence is admissible at trial. Pa.R.E. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Pa.R.E. 401(a-b). In addition, a court may exclude otherwise relevant evidence if its probative value is outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

H.F.'s statements about the neighbor boy had no relevance to Defendant's trial. While the neighbor shared Defendant's name, police reports unequivocally established that H.F. and her family did not meet the neighbor until after she disclosed the sexual abuse. (N.T. Jury Trial

5

Vol. 2, 171:4-8.) Moreover, the probative value of H.F.'s statements was far outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury. H.F. always identified Defendant as her abuser, and Attorney Greenblatt's questions would have only served to complicate and obscure the issues. Accordingly, Attorney Mansfield's objection was properly sustained and the evidence excluded.

## II. The Court did not Improperly Permit the Commonwealth to Lead H.F. on Re-Direct Examination.

Defendant's second claim is that the Court improperly permitted the Commonwealth to lead H.F. on redirect examination. Defendant asserts that, as a result of the leading questions, the Commonwealth directed H.F. to state that in her prior testimony she had answered in the affirmative every time defense counsel ended a question with the word "right."

At trial, after defense counsel engaged H.F. in a lengthy cross-examination that included repeated attempts to impeach her with prior inconsistent statements made when she was six and seven years old, Attorney Mansfield asked H.F. the following questions during her re-direct examination:

| | |
|---|---|
| Atty. Mansfield: | If someone said to you, "Do you remember if that was after you told your mom, right?" Do you think that person is right when they say that to you? |
| H.F.: | No. I'm guessing they just want me to say if that's right or wrong. |
| Atty. Mansfield: | Okay. And when they say "right" to you, are you agreeing with them? |
| H.F.: | Not always because sometimes you could say no. |
| Atty. Mansfield: | Okay. When you were six would you agree with them? |
| Atty. Greenblatt: | Objection . . . Hypothetical, your Honor. |

6

| | |
|---|---|
| The Court: | I think it's appropriate. Six years old is the time of that transcript. You can answer that . . . if you would like. |
| H.F.: | I think you – wait. What was the question again? |
| Atty. Mansfield: | When you were six years old and you were answering these questions, when someone said "right" to you, did you agree with them? Let me find a page. Let me get to a page that says right. If you look at Page 35 . . . If you look at Lines 1, 2 and 3 on Page 34, if you read those. |
| H.F.: | Okay. Line Number 1.<br>Question: One time, did you remember if that was after you told your mom, right?<br>Answer: Yes. |
| Atty. Mansfield: | Okay. Now, if you look down here a little further on that page when he asked you this question: And that was in Pennsylvania, right? |
| H.F.: | Yes. |
| Atty. Mansfield: | Answer was yes. |
| . . . | |
| Atty. Mansfield: | Down on Line 23. When that happened, you said he was in the bathroom, right? |
| H.F.: | Yes. |
| Atty. Mansfield: | So your answer was yes. So every time someone said the word right, to you, did you answer "yes?" |
| H.F.: | Yes. |
| Atty. Greenblatt: | Objection. Judge, we have a full transcript. It's an accurate transcription. |
| The Court: | Well, the jury has heard enough to make their own minds up. |

(N.T. Jury Trial Vol. 2, 175:3 – 178:25.)

7

A careful reading of this passage demonstrates that Attorney Mansfield did not ask H.F. any leading questions. Instead, Attorney Mansfield attempted to rehabilitate H.F. by asking her to examine the answers she gave to leading questions in a prior proceeding, and to indicate whether those answers were influenced by the way the questions were posed. Moreover, Attorney Greenblatt only objected to the questions as hypothetical, never as leading. Accordingly, the Court properly permitted this line of questioning during H.F.'s re-direct examination.

III.    **The Court Properly Granted the Commonwealth's Motion in Limine Prohibiting Defense Counsel from Introducing Evidence that H.F.'s Great-Grandfather pled guilty to, but was not convicted of, Indecent Assault and Corruption of Minors.**

Defendant's next three allegations of error all relate to his attempts to introduce the fact that D▇▇ C▇▇▇ Senior pled guilty to several sexual offenses involving children. On September 4, 2008, D▇▇, Michelle's father and H.F.'s great-grandfather, pled guilty to three counts each of Indecent Assault[6] and Corruption of Minors.[7] Ultimately, D▇▇ died before he could be sentenced for these offenses and the charges were *nolle prossed*. At trial, Defendant sought to introduce evidence of D▇▇'s guilty pleas for three separate reasons: to demonstrate that D▇▇ might have been the individual who abused H.F.; to explain why J▇▇▇ was hyper-vigilant in her attempts to protect H.F. from sexual abuse; and to refute Michelle's claims that her family was not familiar with the procedures followed in child abuse investigations.

---

[6] 18 P.S. § 3126(a)(7).
[7] 18 P.S. § 6301(a)(1).

8

**A. Evidence of D████'s Charges was Properly Excluded as Both Irrelevant and Prejudicial When Defense Counsel Did Not Establish any Connection Between H.F. and Her Great-Grandfather.**

First, Defendant claims that the Court improperly precluded him from introducing evidence that H.F. was in D████'s presence. Defendant sought to present this evidence to demonstrate that D████, not Defendant, might have sexually abused H.F. Prior to trial, the Commonwealth made an oral Motion *in Limine* to exclude evidence of D████'s guilty pleas. The Court granted the Motion, and stated that it would revisit the ruling if defense counsel could establish a connection between D████ and H.F.

During his cross-examination of Michelle, Attorney Greenblatt asked whether D████ ever came to visit when H.F. was present in her home. (N.T. Jury Trial Vol. 3, 397:15-20.) The Commonwealth objected to this question, and the Court sustained the objection, concluding that the testimony established that H.F. was, at most, twenty months old when she last saw her great-grandfather. (N.T. Jury Trial Vol. 3, 400:4-8.) Moreover, the Court held that the evidence was inadmissible because, although D████ pled guilty to the offenses, he died before he could be sentenced and the charges were ultimately *nolle prossed.* (N.T. Jury Trial Vol. 3, 401:24 – 402:10.)

As previously articulated in this Opinion, only relevant evidence is admissible at trial. Pa.R.E. 402. Moreover, a court may exclude otherwise relevant evidence if its probative value is outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. In the case *sub judice*, evidence of D████'s criminal charges had absolutely no relevance to any fact of consequence in the proceeding. D████ died when H.F. was a toddler, and defense counsel failed to establish any connection between H.F. and her great-grandfather that would give the charges

pertinence at Defendant's trial. Moreover, H.F. consistently identified Defendant as the individual that abused her. Finally, although D██ pled guilty to Indecent Assault and Corruption of Minors, he died before sentencing for these offenses could occur and all of the charges were ultimately *nolle prossed*, further diminishing their relevance.

In addition, the probative value of D██'s guilty pleas was significantly outweighed by the risks of unfair prejudice, confusing the issues and misleading the jury. Without establishing any connection between D██ and H.F., defense counsel sought to introduce evidence of D██'s guilty pleas in an attempt to deflect blame from Defendant by implying that D██ was the individual that abused H.F. Since there was no basis to conclude that D██ even had an opportunity to sexually assault H.F., this evidence would have prejudiced the Commonwealth and convoluted the issues before the jury.

**B. Defense Counsel was Properly Precluded from Questioning J████ about Portions of her Diary that Referred to D██ C████ and the C████ Family.**

Next, defense counsel sought to introduce evidence of D██'s guilty pleas to explain why J████ was concerned that H.F. would be sexually abused. Specifically, defense counsel argued that D██'s charges were relevant in this context to explain why J████ "kept journals and . . . was hyper-vigilant about looking out . . . for signs that her daughter was being molested." (N.T. Jury Trial Vol. 2, 39:20-22.) In addition, defense counsel asserted that the evidence was admissible to show that Defendant was on notice of J████'s concerns, and that he was aware that J████ was watching for any indication that H.F. was being abused. (N.T. Jury Trial Vol. 2, 39:22-25.)

During her cross-examination, J████ testified that she kept a journal detailing W████ interactions with H.F. in case a custody dispute ever arose. (N.T. Jury Trial Vol. 3,

10

310:19 – 311:5.) While discussing the journal, defense counsel asked J████if she ever had any concerns about allowing H.F. to stay with W████, Brandy, or the C████ family. (N.T. Jury Trial Vol. 3, 321:20-22.) The Commonwealth objected, and the Court sustained the objection. (N.T. Jury Trial Vol. 3, 321:23-25.)

By asking J████r questions regarding passages of her journal that detailed her concerns about allowing H.F. to visit the C████ family, defense counsel was engaged, once again, in a thinly veiled attempt to open the door to the irrelevant and highly prejudicial evidence of D████'s charges. As previously articulated, evidence of D████'s guilty pleas was completely irrelevant to Defendant's trial, and was significantly more prejudicial than it was probative. Accordingly, the Court properly sustained the Commonwealth's objection to defense counsel's question.

### C. Evidence of D████'s Charges was Not Admissible to Contradict Michelle on a Collateral Issue.

Finally, Defendant attempted to introduce evidence of D████'s charges to demonstrate that Michelle and her family were familiar with the procedures involved in child abuse investigations. During her direct examination, Michelle testified that after H.F. disclosed that she was being sexually abused by Defendant, W████ asked her who to contact to report the allegations. (N.T. Jury Trial Vol. 3, 387:25 – 388:1.) Michelle claimed that she told W████ "I don't know what to do, ████. What do you do? I said, I guess start with CYS. So we looked up York County Children and Youth Services." (N.T. Jury Trial Vol. 3, 388:1-4.)

During his cross-examination of Michelle, Attorney Greenblatt attempted to introduce evidence of D████'s charges to contradict Michelle's claims that she did not know how to report H.F.'s allegations. Specifically, Attorney Greenblatt argued that the evidence was admissible "to show that [Michelle] knows from those convictions how to call CYS and what to do in these kinds of situations." (N.T. Jury Trial, 3, 398:19-25.) The Court ruled that, while Attorney

11

Greenblatt was permitted to question Michelle about any prior inconsistent statements she made regarding her knowledge of child abuse investigations, he could not introduce evidence of D██'s charges. (N.T. Jury Trial Vol. 3, 402:3-17.)

It is well-settled in Pennsylvania that a witness may not be contradicted on collateral matters. *Commonwealth v. Fisher*, 447 Pa. 405, 413, 290 A.2d 262, 267 (1972) (*citing McGoldrick v. Pa. R.R. Co.*, 430 Pa. 597, 600, 241 A.2d 90, 92 (1968)). A collateral matter is "one which has no relationship to the case on trial." *Id.* (*citing Commonwealth v. Petrillo*, 341 Pa. 209, 223, 19 A.2d 228, 295 (1941)). The Supreme Court of Pennsylvania has stated that "the pivotal issues in a trial cannot be 'side-tracked' for the determination of whether or not a witness lied in making a statement about something *which has no relationship to the case on trial.*" *Petrillo*, 341 Pa. at 233, 19 A.2d at 295 (emphasis in original). Contradiction of a witness will only be permitted on "matters germane to the issue trying." *Id.*

Defendant's proffered line of questioning had no relationship to the case on trial, and thus, was not permitted, even for the purpose of impeaching Michelle. While the Court granted defense counsel some leeway to question Michelle about her familiarity with child abuse investigations through the use of prior inconsistent statements, there was absolutely no reason to permit D██'s charges to be admitted to contradict Michelle's testimony. Undoubtedly, admitting evidence of D██s guilty pleas, which was both irrelevant and highly prejudicial, for the limited purpose of impeaching Michelle would have sidetracked the proceedings and confused and mislead the jury.

12

IV.. **The Court Properly Permitted the Commonwealth to Question Defendant about the Circumstances of his Discharge from the Military after Defense Counsel Opened the Door to the Line of Questioning.**

Defendant's next claim is that the Court erred in permitting the Commonwealth to question Defendant about the circumstances surrounding his discharge from the military. Prior to trial, counsel agreed that the Commonwealth could not ask any questions about the fact that Defendant, although honorably discharged from the United States Marnie Corps, was dropped a rank and a pay grade and was barred from re-enlisting in the military as a result of steroid use. (N.T. Jury Trial Vol. 2, 35:16-22.) However, the Commonwealth indicated that the agreement did not apply if defense counsel opened the door by portraying Defendant's military career as flawless and without incident. (N.T. Jury Trial Vol. 2, 35:23 – 36:6.)

During Defendant's direct examination, defense attorney Patricia Piece questioned Defendant about his military background and asked what type of discharge he received. (N.T. Jury Trial Vol. 4, 507:1-2.) Defendant indicated that he received an honorable discharge. (N.T. Jury Trial Vol. 4, 507:3.) As a result, on cross-examination Attorney Mansfield asked Defendant about the fact that he was moved back a pay grade prior to discharge and was prohibited from re-enlisting in the military. (N.T. Jury Trial Vol. 4, 542:5-15.) Attorney Pierce objected to the Commonwealth's questions as improper impeachment evidence, and the Court overruled the objection holding that Attorney Pierce opened the door to the questions by asking Defendant about his discharge status. (N.T. Jury Trial Vol. 4, 542:16 – 543:7.) Nevertheless, the Court cautioned that the Commonwealth was not permitted to ask Defendant about the reason for these sanctions. (N.T. Jury Trial Vol. 4, 543:6-9.)

Pennsylvania courts have held that "if [a] defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe

13

further into the objectionable area." *Commonwealth v. Stakley*, 243 Pa. Super. 426, 430, 365 A.2d 1298, 1300 (1976). This is commonly referred to as "opening the door," or "opening the gate." *Id.* In *Stakley*, the Pennsylvania Superior Court concluded that defense counsel opened the door to questions about a defendant's military discharge status merely by implying that his discharge was honorable. *Id.* In the case at bar, Attorney Pierce directly asked Defendant what type of military discharge he received, unquestionably opening the door to the Commonwealth's questions about the circumstances surrounding his discharge. Had Attorney Pierce's objection been sustained and the Commonwealth's questions precluded, the jury would have reasonably inferred that Defendant's military career was flawless, enhancing his credibility and inaccurately portraying his service. Accordingly, defense counsel's objection was properly overruled.

**V.    The Court's Charge, Read in its Entirety, Provided a Clear and Accurate Explanation of the Law to the Jury.**

Defendant's final claim is that the Court erred in refusing to give Pennsylvania Suggested Standard Criminal Jury Instruction 4.08A, "Impeachment or Substantive Evidence – Inconsistent Statement." Specifically, Defendant claims that this instruction should have been included in the Court's charge because H.F. made several statements at trial which were inconsistent with her prior testimony.

It is well established that a court's jury charge will be upheld so long as it adequately and accurately reflects the law and guides the jury in its deliberations. *Commonwealth v. Ort*, 398 Pa. Super. 475, 482, 581 A.2d 230, 234 (1990). Further, there is no requirement for a trial court to instruct the jury pursuant to every request made to the court, even if the substantive law within the proposed charge is without error. *Commonwealth v. Orgrod*, 576 Pa. 412, 475, 839 A.2d 294, 331 (2003). Finally, in evaluating the correctness of a charge, a court must read the charge

14

it its entirety and the general effect of the charge controls. *Commonwealth v. Myers*, 424 Pa.

Super. 1, 10, 612 A.2d 1009, 1014 (1993).

In the case *sub judice*, I provided the jury with the following instructions regarding

inconsistent statements by witnesses:

> Throughout your lifetime, you've been deciding whether someone who speaks to you is telling you something which is truthful and straightforward, something upon which you can rely upon in your own affairs. Use the experience that you've gained in your everyday life as well as your own good common sense when you go into the jury room to deliberate and in determining the credibility of the witnesses and their testimony.
>
> As the sole judges of the facts, you must decide the truthfulness and accuracy of each witness' testimony and decide whether to believe all or part or none of that testimony. The following are some examples of factors which you may and should consider when judging the credibility and deciding whether or not to believe the testimony. Was the witness able to see, hear, or know the things about which they testified? How well could the witness remember and describe the things about which they testified? Was the ability of the witness to see, hear, know, remember or describe affected by youth or old age or by any physical, mental or intellectual deficiency or impairment? Did the witness testify in a convincing manner? Did the witness have any interest in the outcome of the case, or any bias, prejudice or other motive that might affect the witness' testimony? How well does the testimony of the witness square with the other evidence in the case, including the testimony of the other witnesses?
>
> While you're judging the credibility of each witness, you're likely to be judging the credibility of the other witnesses and evidence. If there's a real, irreconcilable conflict, it is up to you to decide which, if any, conflicting testimony or evidence to believe. As the sole judges of credibility and facts, you, the jury, are responsible to give the testimony of every witness and all the other evidence whatever credibility and weight you think it deserves . . .
>
> . . . Where there is a conflict in testimony, you, the jury, have the duty of deciding which testimony to believe, but you should first try to reconcile, that is, fit together, any conflicts in the testimony if it can be done fairly and accurately. Discrepancies and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony. Remember, two or more persons witnessing an incident

15

may see or hear it happen differently. Also, it's not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened. If you cannot reconcile a conflict in the testimony, it is up for you to decide which testimony, if any, to believe and which to reject as untrue or inaccurate.

... [i]n making this decision, consider whether the conflict involves a matter of importance or merely some detail, and whether the conflict is brought about by an innocent mistake or intentional falsehood. You should also keep in mind all the other factors which I've already discussed with you in deciding whether or not to believe a witness.

(N.T. Jury Trial Vol 5., 647:5 – 648:13; 651:10 – 652:5.)

My instructions not only furnished the jury with a clear and accurate recitation of the law, but additionally provided the panel with extensive guidance on how to evaluate the credibility of the witnesses, and how to reconcile inconsistent testimony. Further, at the completion of my charge, I asked both Attorneys Greenblatt and Mansfield to indicate whether there were any additional instructions that should be included in my charge. (N.T. Jury Trial Vol. 5, 664:15-16.) Both attorneys agreed that the charge was complete. (N.T. Jury Trial Vol. 5, 664:17-18.) Accordingly, not only was my charge an adequate and accurate recitation of the law, but no request for or objection to the absence Pennsylvania Suggested Standard Criminal Jury Instruction 4.08A was made a part of the record, and as a result, the issue was waived.

## CONCLUSION

Since Defendant's claims of error lack merit, this Court respectfully requests that his appeal be dismissed.

According, I enter the following:

16

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA  :
             :
     v.        :   No. 3291-2012
             :
DEREK J. WIGGINS       :

## ORDER

AND NOW, this 28th day of April, 2014, the Court hereby submits this Opinion pursuant

to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

I certify this document to be filed
in the Lancaster County Office of
the Clerk of the Courts.

BY THE COURT:

Joshua G. Parsons
Clerk of the Courts

JEFFERY D. WRIGHT
JUDGE

Attest:

Copies to:
  Karen Mansfield, Assistant District Attorney
  Ronald Greenblatt, Esquire
    123 S. Broad Street, Suite 2500, Philadelphia, PA 19109